# Philadelphia Company for Guaranteeing Mortgages, Appellant, *v.* Guaranty Realty Company.

*Corporations—Mortgages—Taxation—Tax on corporate loans—Mortgages given by individuals assumed by corporations—Duty to withold tax—Acts of June 17, 1913, P. L. 507, and July 15, 1919, P. L. 955.*

The Act of June 15, 1919, P. L. 955, requires the treasurer of a Pennsylvania corporation, or one doing business in this State, to withhold a tax of four mills to be paid to the Commonwealth out of the interest payable under the terms of a mortgage, covering its real estate, upon a number of bonds secured by the mortgage, even although it was executed by an individual and the property secured thereby subsequently conveyed to the corporation subject to the mortgage,

PHILA. CO. FOR G. M., Appel., *v.* GUARANTY R. CO. 259

258, (1922).]       Syllabus—Arguments.

Prior to the passage of the Act of July 15, 1919, P. L. 955, a corporation was only required to assess and collect the state tax on loans or indebtedness which it had created and for which it had issued its obligations. The Act of July 15, 1919, P. L. 955, amending section 17 of the Act of June 17, 1913, P. L. 507, imposes a tax for state purposes on all evidences of indebtedness issued or assumed by corporations incorporated in or doing business in this Commonwealth, or upon which they pay interest. Since the amendment, all such evidences of indebtedness are obligations of the company for tax purposes within the meaning of the 18th section, directing how the tax imposed in section 17 of the Act of 1913 shall be assessed and collected.

Argued October 17, 1921. Appeal, No. 53, Oct. T., 1921, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1920, No. 1359, in favor of defendant on case stated in the suit of Philadelphia Company for Guaranteeing Mortgages, Trustee, v. Guaranty Realty Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Case stated to determine the duty of a corporation to withhold tax on indebtedness under the provisions of the Act of June 17, 1913, P. L. 507, as amended by Act of July 15, 1919, P. L. 955. Before McMICHAEL, P. J.

The opinion of the Superior Court states the case.

The court entered judgment for defendant. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*M. B. Saul,* of *Saul, Ewing, Remick & Saul,* and with him *Joseph A. Lamorelle,* for appellant, cited: Com. v. Roxford Knitting Company, 268 Pa. 266; Com. v. Lehigh & New England Railroad Company, 268 Pa. 271.

*L. Pearson Scott,* and with him *Harry C. Kohlhas, Jr.,* and *Louis J. Bergson,* for appellee.

*George Ross Hull,* Deputy Attorney General, and with him *George E. Alter,* Attorney General, for the Commonwealth of Pennsylvania, intervening appellee.

OPINION BY KELLER, J., April 17, 1922:

This appeal is from the judgment of the court below on a case stated, and involves the construction of the Act of June 17, 1913, P. L. 507, providing revenue for state and county purposes and imposing taxes upon certain classes of personal property, as amended by the Act of July 15, 1919, P. L. 955.

It was held in Com. v. DuPont Land Co., 254 Pa. 446, that mortgage indebtedness created by an individual, previous to the conveyance of the land encumbered thereby to a corporation, did not constitute "any scrip, bond or certificate of indebtedness issued by said corporation," so as to require the corporation to assess and deduct from resident holders thereof the tax for state purposes under the provisions of the Act of June 30, 1885, P. L. 193, even though it was stipulated in said conveyance that the corporation assumed and agreed to pay the principal and interest of said mortgage indebtedness; that under said act the corporation was only required to assess and collect the state tax on loans or indebtedness which it had created and for which it had issued its obligations: (see also Com. v. Lancaster E. L., H. & P. Co., 268 Pa. 290).

The Act of June 17, 1913, P. L. 507, which was enacted after the settlement of the tax involved in the DuPont case, used practically the same language, with respect to the subjects taxable for state purposes, (section 17), as was contained in the Act of 1885 (section 4); its greatest difference, and chief purpose, was to provide that the tax [now four mills] on moneyed capital in the hands of individual residents of this Commonwealth, commonly known as the personal property tax, originally imposed by the Act of April 29, 1844, P. L. 497, section 32, and reënacted from time to time with but few

changes in the Acts of June 7, 1879, P. L. 112, (section 17) ; June 30, 1885, supra, (section 1) ; June 1, 1889, P. L. 420; June 8, 1891, P. L. 229; May 1, 1909, P. L. 298, and May 11, 1911, P. L. 265, should be assessed and collected for county purposes only,—instead of for state purposes, with a return by the state to the county of one-third (Act of 1889) or three-fourths (Act of 1891) : Provident Life & Trust Co. v. Klemmer et al., 257 Pa. 91, 100. The decision in the DuPont case, therefore, applied with equal force to the Act of 1913.

To remedy the condition resulting from this decision, —for the Commonwealth's taxing officers contended that its effect in practice was to relieve such securities from all taxation, since the individual mortgagees or holders of such bonds, considering them to be corporate obligations, failed to return them to the local assessor for taxation, and the corporation did not assess and collect the state tax upon them, because they were not corporate indebtedness—as well as to distinguish more clearly between the subjects taxed for county purposes under section 1 of the Act of 1913 and those taxed for state purposes under section 17 of that act, (following the decisions of the Supreme Court in Com. v. Roxford Knitting Co., 268 Pa. 266, and Com. v. Lehigh & New England R. R. Co., 268 Pa. 271),—the Act of July 15, 1919, P. L. 955, amending section 17 of the Act of June 17, 1913, was passed. It provides [eliminating such portions as are not now material] "That all scrip, bonds, certificates and evidences of indebtedness issued, and all scrip, bonds, certificates and evidences of indebtedness assumed, or on which interest shall be paid, by any and every private corporation, incorporated or created under the laws of this Commonwealth or the laws of any other state or of the United States, and doing business in this Commonwealth......are hereby made taxable in the year one thousand nine hundred and nineteen, and annually thereafter for state purposes, at the rate of four mills on each dollar of the

nominal value thereof.......And provided further, that corporations......liable to tax on capital stock for state purposes, shall not be required to pay any further tax under this section on the mortgages, bonds and other securities owned by them in their own right; but corporations......holding such securities as trustees, ......shall be liable for the tax imposed by this section upon all securities so held by them as in the case of individuals: And provided further, that none of the classes of property made taxable by this section for state purposes shall be taxed or taxable for county, school or other local purposes. It is the intent of this act that all scrip, bonds, certificates, and evidences of indebtedness made taxable under this section are not taxable under section one (1) of the act to which this is an amendment, and that only such scrip, bonds, certificates, and evidences of indebtedness which cannot be made taxable under this section are to be taxed under section one (1) of said act."

This amendment makes two things clear: first, that the state tax on corporate loans is extended from "all scrip, bonds, or certificates of indebtedness issued" by the corporations referred to in the seventeenth section of the Act of 1913, to "all scrip, bonds, certificates and evidences of indebtedness issued......assumed, or on which interest shall be paid" by such corporations; and second, that the securities made taxable for county purposes under section 1 of the Act of 1913, are to be restricted to such as cannot be made taxable under section 17 as amended; that while the State, in its generosity, has turned over to the several counties for their own use, all, instead of three-fourths, of the tax derived from the kinds of personal property enumerated in section 1, it has reduced the subjects taxable for county purposes under that section, by transferring to section 17, to be taxed for state purposes, loans and indebtedness assumed by or on which interest is paid by corporations organized or doing business in this Commonwealth, in

addition to those issued by such corporations, and by enlarging its scope so as to include all evidences of indebtedness and not merely scrip, bonds and certificates; and has provided that the State is to have the right of way, and if any securities are apparently, by the language of the act, taxable under both sections, the seventeenth section is to prevail and the first section is to be confined to such securities as cannot be made taxable under section 17.

The mortgage referred to in the case stated was not issued by the defendant corporation and was therefore not within the provisions of section 17 of the Act of 1913, as originally enacted; but the said corporation, (which is a Pennsylvania corporation), does pay the interest on the bonds which it was given to secure and it is therefore covered by the provisions of said section, as amended by the Act of 1919, P. L. 955, provided it is included within one of the classes made taxable thereby, to wit, scrip, bonds, certificates or evidences of indebtedness. The appellant contends that as "all mortgages" are included under section 1, and mortgages are not specifically made taxable in section 17, no mortgages can be taxed under section 17. But this construction would apply to mortgages issued by corporations no less than to those only assumed by them or on which they pay interest, and the whole history of our tax legislation and the settled course of the decisions thereon negatives any such conclusion.

The words "all mortgages" appeared in every act imposing a state tax on personal property, to be assessed and collected through the local tax authorities, from the Act of April 29, 1844, supra, down to the Act of May 11, 1911, supra, and yet since the Act of June 30, 1885, supra, it was never disputed that the provisions for the assessment of a tax for state purposes on the nominal value of scrip, bonds, or certificates of indebtedness issued by corporations organized or doing business in Pennsylvania by the treasurers of such corporations and

the deduction by them of the same from the interest paid
resident holders of such indebtedness, included the in-
terest on mortgages, or on the bonds secured by such mort-
gages, issued by such corporations; and that the mort-
gages returned to the local authorities for assessment
and taxation on their actual value, comprised only mort-
gages which were not taxable as such corporate indebt-
edness.    Money at interest was thus taxable in two dis-
tinct ways.    If it was embraced within scrip, bonds or
certificates of indebtedness issued by corporations in-
corporated in or doing business in Pennsylvania,—and
this included mortgages securing bonds issued by such
corporations—it was taxed on its nominal or par value
and the tax was assessed and collected for the State by
the treasurer of such corporation.    If it was not, it was
assessed at its actual value by the local assessor and
collected by the local tax collector.    The term "mort-
gage" as used in the acts imposing a tax on personal prop-
erty, clearly means "mortgage indebtedness."

Now, as before stated, the purpose of the Act of 1913
was not to disorganize this system of assessing and col-
lecting taxes, which was well understood and estab-
lished, but to provide that instead of the counties receiv-
ing three-fourths of the personal property tax thus col-
lected through the local authorities, as provided by the
Act of June 8, 1891, supra, they should have all; it was
not intended that the subjects of taxation comprised
within the other method, by assessment and collection
through the corporation treasurers, should be interfered
with.    And the purpose of the amendment of 1919, was
to enlarge the class of corporate securities thus taxed
and insure their taxation for state purposes.    This is
seen from a number of circumstances.    In the first place,
following the subjects of taxation for county purposes
enumerated in the first section of the Act of 1913,—
which, as before stated, is identical with the subjects for
taxation by local authorities for state purposes in the
long line of statutes ending in the Act of May 11, 1911,

supra,—we find the exception, "except such loans as are made taxable for state purposes by section seventeen hereof," showing an intention not to interfere with the system in force for the taxation of corporate indebtedness. And when we examine the seventeenth section of the Act of 1913, even before its amendment in 1919, we find in one of its provisos,—reënacted in the amendment of 1919, and quoted above as a part of said amendment,—that mortgages are specifically mentioned as one of the corporate securities embraced within its provisions, thus showing that mortgages issued by the corporations specified in the seventeenth section were taxable under that section and not by the first section of the Act of 1913. It follows that since the seventeenth section was enlarged by the amendment of 1919 so as to include all "evidences of indebtedness" on which the corporation pays interest, mortgage indebtedness on which the corporation pays interest is subject for taxing purposes to the seventeenth and not the first section of the act, as amended. In fact, there is more reason for holding that section 17, as amended in 1919, applies to corporate mortgages than there was before, for "evidences of indebtedness" is a far more inclusive term than the other items, under which taxes on corporate mortgages were consistently assessed and collected since 1885. The reason is not difficult to see. Corporation mortgages are nearly always accompanied by bonds or other evidences of indebtedness, which constitute the real debt or obligation, the mortgage being simply the security for their payment: Wilson et al. v. Shoenberger's Exrs., 31 Pa. 295; McIntyre v. Velte, 153 Pa. 350. It followed that as the real debt, in the form of the corporate bond, was taxable in the manner prescribed by section 17,—that is by assessment and deduction by the corporation treasurer, —the mortgage securing it was not subject to a second taxation through the local assessor and collector of taxes. The same condition is found here. For, by the case stated, it appears that the mortgage upon defend-

ant's property was given to secure the payment of two hundred and eighty bonds, each for the sum of $500 bearing even date with said mortgage, and that it is the interest on these bonds, secured by the mortgage as aforesaid, which the defendant corporation is obliged to pay, from which it is deducting the four mills tax for the purpose of paying it to the State in accordance with the seventeenth section of the Act of 1913 as amended. The terms of the case stated, therefore, bring it within the express provisions of the amending Act of 1919, for the interest paid by the corporation was on the bonds, secured by the mortgage, and while we have no doubt the act is broad enough to include corporate mortgage indebtedness, even where no bonds are secured thereby, it, certainly, by its very terms, applies to "bonds......issued,......assumed, or on which interest shall be paid" by such corporations, whether additionally secured by mortgage or not.

But the appellant further contends that there can be no valid deduction from the mortgage bond interest in this case for state taxes, because, it alleges, there is no provision made for the collection of such taxes by the corporation, where the mortgage and bonds are only assumed, and not issued, by it.

Section 18 of the Act of June 17, 1913, provides "That the tax for state purposes, imposed upon obligations of private and public corporations by section 17 of this act, shall be collected in the same manner as the tax heretofore imposed for state purposes upon such obligations; it being the true intent and meaning of this act that the provisions of the law in force at the time of the passage of this act, relating to the collection of the state tax upon such obligations, shall remain unaffected by the present act."

The amendment to this section of July 15, 1919, P. L. 958, makes its provisions applicable to all foreign corporations duly registered and doing business in this State without regard to whether the treasurers or other

fiscal officers of such corporations whose duty it may be to pay the interest on "obligations of the character aforesaid" may be residents or nonresidents of the Commonwealth.

The Act of July 15, 1919, P. L. 954, provides that the duty imposed on corporations relative to the deduction and payment of state taxes on "scrip, bonds, certificates and evidences of indebtedness by such corporation issued or assumed," shall extend to payments of back interest made by the corporation to the extent that such deduction might have been required to have been made under existing law had the interest actually been paid when due. Section 2 provides that the state tax imposed by section 1 of the act shall be collected in the same manner as the tax heretofore imposed for state purposes on obligations of such corporations whereon interest is annually paid.

While the last-mentioned act recognizes that the corporate indebtedness subject to taxation for state purposes has been enlarged, it may be conceded that these acts do not attempt to enumerate or define the corporate indebtedness which is subject to the withholding of tax from the interest paid by the corporation; that was done by section 17 of the Act of 1913, as amended by the Act of 1919, P. L. 955. Nor does the eighteenth section prescribe the method of collection minutely or other than by reference to the manner of collection of state tax on corporate obligations under the laws then in force, that is, section 4 of the Act of June 30, 1885, P. L. 193, [amended by the Act of July 21, 1919, P. L. 1067, so as to cover any evidence of indebtedness], which directs the treasurer of the corporation to assess the tax on the indebtedness taxable by law at its nominal value and to deduct from the interest due the creditor the tax thus assessed and pay it over to the state treasurer. In other words, section 17 of the Act of 1913, as amended by the Act of 1919, P. L. 955, enlarges the subjects of state taxation on personal property and imposes the tax; section

18 of the same act provides that the tax thus imposed shall be collected as taxes for state purposes on corporate obligations have heretofore been collected; and section 4 of the Act of June 30, 1885, as amended by the Act of July 21, 1919, P. L. 1067, prescribes the mode of collection, including assessment, report, deduction from the interest, and payment by the treasurer of the corporation to the state treasurer. There is no reason for holding that despite the enlargement of the subjects of taxation in the Act of 1919 (P. L. 955), the effect of this enlarging act should be nullified by restricting the subjects of taxation to those particularized in the fourth section of the Act of 1885. Section 4 of the Act of 1885 does not impose a tax on corporate indebtedness, but provides the mode of collection of such taxes: Maltby v. R. & C. R. R. Co., 52 Pa. 140.

A somewhat similar situation arose in construing the Act of June 8, 1891, P. L. 229, and its effect upon section 4 of the Act of 1885, supra. Section 1 of the Act of 1885 imposed a tax for state purposes of three mills upon all mortgages and other moneyed capital in practically the same language as is employed in section 1 of the Act of 1913. Section 4 of the Act of 1885 made it the duty of treasurers of corporations doing business in this State, on the payment of any interest on any scrip, bond, or certificate of indebtedness issued by said corporation to residents of this Commonwealth to assess "the tax imposed and provided for state purposes upon the nominal value of each and every said evidence of debt," and deduct "three mills on every dollar of the interest paid as aforesaid" and pay the same into the state treasury. The Act of 1891 amended section 1 of the Act of 1885 by raising the state tax from three to four mills, but did not amend section 4. It was nevertheless held in Com. v. Wilkes-Barre & Scranton Ry. Co., 162 Pa. 614, that the increased rate applied with equal force to section 4; that section 4 prescribed the method of collection of the state tax on loans issued by corporations doing business

in this Commonwealth and held by residents of the Commonwealth, and that the new rate of taxation for state purposes fixed by the Act of 1891 applied to it as well. Following the spirit of that decision, we have no hesitation in holding that the method of collection prescribed in that section applies to the new subjects of taxation introduced into section 17 of the Act of 1913 by the amendment of 1919, P. L. 955. See also Com. v. Chester City, 123 Pa. 626, where it was decided that the rate of taxation on municipal loans was fixed by section 1 of the Act of 1885, but the method of collection by the forty-second section of the Act of 1844, P. L. 501.

The language used in section 18 of the Act of 1913, "that the tax for state purposes imposed upon obligations of public and private corporations by section 17 of this act shall be collected in the same manner as the tax heretofore imposed for state purposes upon such obligations; it being the intent and meaning of the act that the provisions of the law in force at the time of the passage of this act relating to the collection of the state tax upon such obligations shall remain unaffected by the present act" covers the whole process of collection and includes assessment, report, deduction and payment, in the manner prescribed in the Act of 1885. See Com. v. Lehigh Valley R. R. Co., 104 Pa. 89, 107, where it was held that the phrase "laws regulating the mode of payment" in section 3 of the Act of April 30, 1864, P. L. 218, embraced the whole process of assessment and collection. To assess the tax is only to determine the amount of the company's indebtedness liable to taxation at its nominal value and to apply thereto the rate fixed by law, the taxation being the result of the rate thus applied: Com. v. Lehigh Valley R. R. Co., 129 Pa. 429, 455.

It is the "predominating policy" of this State that the holders of such securities shall bear a fair share of the cost of maintaining the government: In re Appeal of Callery, 272 Pa. 255, (filed in Supreme Court, January

3, 1922) ; and the courts will construe the tax laws liberally, with that end in view.   This is apparent from the decisions upon the fourth section of the Act of 1885, supra, where the tax was directed to be assessed on the nominal value of the corporate indebtedness held by residents of the Commonwealth, but the treasurer of the corporation was directed to deduct only "three mills on every dollar of the interest paid."   It was nevertheless held that it was clear that what was intended was that three mills on every dollar of the nominal value, i. e., the principal, should be deducted from the interest paid, and it was accordingly so construed: Com. v. Del. Div. Canal Co., 123 Pa. 594; Com. v. Wilkes-Barre & Scranton Ry. Co., 162 Pa. 614, p. 619.   And in Com. v. Mortgage Trust Co., 227 Pa. 163, 182, 183, it was held that the repealing clause in the Act of June 13, 1907, P. L. 640, which changed the method of determining the value for tax purposes of shares of stock held by trust companies did not operate to release such corporations from liability for unpaid taxes which had accrued under the acts so repealed.   Such liberality in construing statutes has frequently been employed where it was necessary to effectuate the intent of the statute, and some minor provision inconsistent therewith has been overruled: W. Va. Pulp & Paper Co. v. P. S. C., 61 Pa. Superior Ct. 555, 569, 570; Lancaster County v. Frey, 128 Pa. 593.

The Act of 1919, P. L. 955, amending section 17 of the Act of 1913, imposes a tax for state purposes on all evidences of indebtedness issued or assumed by corporations, incorporated in or doing business in this Commonwealth, or upon which they pay interest.   Since the amendment, all such evidences of indebtedness are obligations of the company, for tax purposes, within the meaning of the eighteenth section, directing how the tax imposed in section 17 shall be assessed and collected. It must be remembered that the tax is not imposed on the corporation, nor on the security holders as a body, but on the property in the hands of each resident secur-

ity holder as an individual: Com. v. P. & R. R. R. Co., 150 Pa. 312.

The case stated directs that judgment shall be entered for the plaintiff only if the court should be of the opinion that the defendant should not have retained any part of the tax in dispute. No question is raised as to the non-residence of any of the holders of said bonds and the matter will therefore be considered as if they were residents: Com. v. Penna. Salt Mfg. Co., 145 Pa. 53; Com. v. Peoples Pass. Ry. Co., 183 Pa. 353. Nor is there any allegation that any of the holders of said bonds have returned any of them for taxation to the local tax authorities and thus are liable to double tax on the same indebtedness; hence the condition referred to in Com. v. Lehigh Valley R. R. Co., 104 Pa. 89, 105, 106, is not here present. If such a situation should arise through a misconception of the statute, we have no doubt of the power of the Commonwealth's revenue officers to deal with it equitably. In our opinion the court below correctly interpreted the law in entering judgment on the case stated for the defendant.

The judgment is affirmed.